Dear Superintendent Garrett,
¶ 0 This office has received your request for an official Attorney General Opinion addressing the following question:
Given the limitations on the use of public funds and publicproperty found in Article X, §§ 14, 15 and 17 of the OklahomaConstitution, under what circumstances may a school districtenter into a contract with a local school foundation?
¶ 1 An expenditure of public funds or a use of public property must comply with Article X, §§ 14, 15 and 17 of the Oklahoma Constitution. These provisions mandate that any expenditure of public funds or use of public property be in furtherance of a lawful public purpose and not a gift.
¶ 2 The constitutional provisions regarding public purpose and gifts are generally construed in conjunction with each other. A determination that an expenditure is for an authorized public purpose necessarily mandates a determination that the same is not a gift of public monies. From a reading of the Oklahoma Constitution and pertinent cases, public funds can only be appropriated for a public purpose and public funds must be used in furtherance of a governmental function as opposed to benefiting private individuals or groups. Likewise, public property can only be used for a public purpose. Therefore, the first hurdle is to determine whether providing funds for the purpose of funding a contract or using school property as part of a contract with a local foundation meets the public purpose standard. In Way v. Grand Lake Association, 635 P.2d 1010
(Okla. 1981), the Oklahoma Supreme Court had occasion to analyze the term "public purpose":
 [T]he term "public purposes" as used in section 14, Art. 10 is not to be construed in a narrow and restrictive sense. Pawnee County Excise Board v. Kurn, [187 Okl. 110, 101 P.2d 614], supra. In 51 Am.Jur. p. 378, section 326, it is stated that the term "public purpose" as used in constitutional provisions that taxes shall be levied for public purposes only, is synonymous with "governmental purposes," and means a purpose affecting the inhabitants of a state or taxing district as a community, and not merely as individuals.
Id. at 1015, quoting Board of Commissioners of Marshall Countyv. Shaw, 199 Okl. 66, 182 P.2d 507, 515 (1947).
¶ 3 In Way, the Supreme Court held that certain State legislative appropriations to private organizations did not violate the provisions of Article X, § 15 of the Oklahoma Constitution, for the reason that the appropriation was for a legitimate governmental purpose and because the State retained ultimate control over the expenditure of the funds involved. The Article X, § 15 prohibition on state spending is virtually the same as the prohibition contained in Article X, § 17 regarding expenditures of local government:
 The Legislature shall not authorize any county or subdivision thereof, city, town, or incorporated district, to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to loan its credit to any corporation, association, or individual.
Okla. Const. art. X, § 17.
¶ 4 In Way, private organizations were required to submit detailed budgets and submit to audits to insure that State funds were being spent on activities approved by the State agency. The Supreme Court observed:
 [U]nder the legislation here under consideration, detailed conditions and governmental safeguards and controls are legislatively mandated as conditions for the participation by the defendant in the appropriation.
Way, 635 P.2d at 1015.
¶ 5 The above-referenced safeguards and controls were found by the court to distinguish Way from Vette v. Childers,228 P. 145 (Okla. 1924) and Veterans of Foreign Wars v. Childers,171 P.2d 618 (Okla. 1946). In Vette, the State Board of Agriculture was authorized to invest funds in mortgage bonds on warehouses owned by farmer cooperatives. The Court found that the individuals to whom the funds were to be loaned were the direct beneficiaries of the act and that any public benefit was indirect. The Court observed that:
 The appropriation provided in section 18 of the act under consideration is not for purposes of regulation and control of the enterprise, but is to assist in establishing a system of warehouses to be owned, operated, and controlled by associations of individuals. While the establishment and operation of the system of warehouses might ultimately result in a benefit to the entire farming class of the state, and by reason of the encouragement given to this industry might result in a general benefit to the entire public, the direct object of this appropriation is for the assistance of the group of individuals who shall own, operate, and control the warehouses.
Vette, 223 P. at 148 (emphasis added).
¶ 6 The Oklahoma Constitution, at Article X, §§ 14, 15 and 17, prohibits a school from taking monies from its general fund and turning those monies directly over to a local foundation to fund the foundation's activities.[1] In addition, these provisions prohibit use of public property by a foundation without a public benefit. These provisions do not, however, prohibit a school from contracting with the foundation, or any other entity, to provide a legitimate service to the school.
¶ 7 There are situations where a school can enter into lawful contracts with a local foundation or other organization. Schools have been statutorily granted the power to make contracts. 70O.S. Supp. 1997, § 5-105[70-5-105]. A school board has considerable latitude in governing and operating a school district and power to expend the funds necessary to do so. Board of Education ofOklahoma City v. Cloudman, 92 P.2d 837 (Okla. 1939). School foundations exist and operate for the benefit of the public school. If a school, acting through its governing board, determines that a local foundation could provide services for the school amounting to a public purpose, it would be legitimate for that school to enter into an agreement with the foundation. Of course, proper procedures for the expenditure of public funds must be followed. The services provided would be the value or consideration required for a valid contract.
¶ 8 In order for an appropriation to be validly made to fund a contract with a private entity it must not only be for a public purpose, but it must be made in such a manner as to insure that primary control over expenditures will always lie with the public entity. The private entity must be under a contractual obligation to perform the contract as stipulated by the governmental entity in a manner approved by the governmental entity. The contract must be performed in such a manner as to insure governmental supervision and the public entity must retain the power to terminate its relationship with the private entity if it determines that the private entity has not satisfactorily fulfilled its obligations.
¶ 9 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The provisions of Article X, §§ 14, 15 and 17 of the OklahomaConstitution do not prohibit a school from contracting with alocal foundation provided that a valid public purpose exists forthe expenditure by the district and that sufficient controls arepresent in the contract to insure performance by the foundation.
 Whether any particular contract amounts to a lawfulexpenditure for a valid public purpose is a question of fact andnot appropriate for an Attorney General Opinion. 74 O.S. Supp.1997, § 18b(A)(5).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DOUGLAS F. PRICE ASSISTANT ATTORNEY GENERAL
[1] Section 5-145(J) of Title 70 prohibits the deposit of "public" funds into an account owned or controlled by a local foundation. The statute does not prohibit deposit of funds paid pursuant to a valid contract.